# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **K.R.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:17-cv-299-WKW-DAB |
| ) | |
| **BACKPAGE.COM, et al.,** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on the Motion to Remand filed by the Plaintiff, K.R. (Doc. 33). Removing Defendants, Medalist Holdings, Inc.; Leeward Holdings, LLC; Camarillo Holdings, LLC; Michael Lacey; James Larkin; Backpage.com, LLC; IC Holdings, LLC; Dartmoor Holdings LLC; Atlantische Bedrijven C.V.; and Carl Ferrer (collectively, "Backpage" or "Backpage Defendants"), oppose the motion (Doc. 39). No other Defendant has filed a response to the motion. The motion requests this court remand the case to the Circuit Court of Houston County, Case No. 38-CV-2017-900041.00 because the court lacks subject matter jurisdiction. Specifically, K.R. contends the Backpage Defendants have failed to show diversity of citizenship among the parties and Backpage's arguments of misjoinder are misplaced. (Doc. 33 at 2). Having carefully considered the parties' arguments, the applicable case law, and the record as a whole,[1] the Court finds that the motion is due to be granted. For the reasons stated herein, it is the **RECOMMENDATION** of the undersigned that the Plaintiff's Motion to Remand be **GRANTED** and this matter be remanded to the Circuit Court for Houston County.

---

[1] Backpage Defendants requested oral argument and K.R. has not yet filed a reply to Backpage's response, but the parties have fully and thoroughly briefed the issues, and thus the court finds no need for additional argument in order to rule on the motion.

I.   **BACKGROUND**[2]

K.R. initiated this lawsuit in January 2017 in the Circuit Court for Houston County, by the filing of a four-count complaint against numerous Defendants arising out of allegations that she was a victim of sex trafficking as a minor. (Doc. 1-1). Her amended[3] Complaint filed April 7, 2017, sues the Backpage Defendants, Choice Hotels, International, Inc. ("Choice Hotels"), Veda LLC ("Veda"), Nirav Joshi ("Joshi"),[4] Santiago Alonso ("Alonso"),[5] and numerous fictitious defendants, for claims of violation of Alabama's Anti Human-Trafficking Statute[6] against all Defendants (Count I), Outrage against Backpage Defendants, Joshi, Veda, and Alonso (Count II); Negligent and/or Wanton Conduct against Backpage Defendants, Choice Hotels, Veda, and Joshi (Count III); and Unjust Enrichment against all Defendants (Count IV). (Doc. 1-2). The Backpage Defendants removed the case to this court on May 5, 2017.[7] (Doc. 1).

Pertinent to the issue of diversity of citizenship, K.R.'s amended complaint makes the following allegations: K.R. is a resident of Mississippi; Backpage.com, LLC is a Delaware limited liability

---

[2] The background facts are taken from the allegations in K.R.'s amended complaint. (Doc. 1-2). "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff…. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal, but the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Attorney Robert Segall submitted a declaration in connection with the notice of removal. (Doc. 1-4).

[3] She amended her complaint to substitute Medalist Holdings, Inc. for Medalist Holdings LLC. *See* (Doc. 1-2 at 1).

[4] Counsel for Veda LLC filed a suggestion of death for Joshi. (Doc. 29). K.R. intends to file a notice substituting Joshi's Estate as a named Defendant. (Doc. 37, ¶ 3).

[5] Defendant Alonso was convicted after a jury trial on one count of first-degree human trafficking and one count of felony distribution of drugs to a minor and was sentenced to fifty years in prison for his crimes against K.R. (Doc. 37, ¶ 4). He is currently incarcerated in the Bibb County, Alabama Correctional Facility. (Doc. 1-2, ¶ 19). Alonso has not appeared in the litigation.

[6] *See* ALA. CODE § 13A-6-157 ("An individual who is a victim of human trafficking may bring a civil action in the appropriate state court. The court may award actual damages, compensatory damages, punitive damages, injunctive relief, and any other appropriate relief. A prevailing plaintiff shall also be awarded attorney's fees and costs. Treble damages shall be awarded on proof of actual damages where defendant's acts were willful and malicious.").

[7] Defendants' removal was based on diversity jurisdiction under 28 U.S.C. § 1332, and the doctrine of fraudulent misjoinder. (Doc. 1, ¶ 3).

company; Camarillo Holdings, LLC is a Delaware limited liability company; Medalist Holdings, Inc. is a Delaware limited liability company; Leeward Holdings, LLC is a Delaware limited liability company; Dartmoor Holdings, LLC is a Delaware limited liability company; IC Holdings, LLC is a Delaware limited liability company; Atlantische Bedrijven C.V. is a Dutch company domiciled in Curacao; Carl Ferrer is a resident of Texas; Michael Lacey is a resident of Arizona; James Larkin is a resident of Arizona; Choice Hotels is a Maryland corporation; Veda LLC, is an Alabama domestic limited liability company; Nirav Joshi is a resident of Dothan, Houston County, Alabama; and Santiago Alonso is currently in the custody of the Alabama Department of Corrections at the Bibb County Correctional Facility. (Doc. 1-2, ¶¶ 5–19).

By her Complaint, K.R. alleges she was trafficked for sex as a minor in Dothan, Houston County, Alabama. She alleges Defendants conspired, enabled and/or otherwise worked together in a sex trafficking venture in which she was victimized in violation of both common law and statutory law, Alabama's anti human-trafficking statute. According to the allegations in the Complaint, Alonso picked up K.R. on a Hattiesburg, Mississippi road. She was a seventeen-year-old runaway who was tired and hungry, and he offered her a ride. He took her to a motel where she met two other women who were traveling with him. He drove K.R. and the two women to Memphis, Shelby County, Tennessee, where they remained for several weeks while he groomed her for sex trafficking and provided her with drugs in order to assist in his efforts to gain control over her. While they were in Memphis, Alonso began trafficking her by forcing K.R. to engage in sex acts for pay and threatening her with physical violence if she refused. After several weeks, Alonso drove K.R. and one of the other women to the Choice Hotels' Quality Inn franchise owned and operated by Defendants Veda and Joshi, in Dothan, Alabama. Alonso paid cash to reserve two rooms—one for him and one to use for sex trafficking K.R.

Alonso took photographs of K.R. and posted them in the "adult" advertisements on the Backpage Defendants' website, www.backpage.com. K.R. alleges the "adult" advertisements on www.backpage.com, including the advertisements sexually trafficking her as a minor child in Alabama,

3

were posted online to a targeted Alabama audience and sold to Defendant Alonso while he was sex trafficking K.R. in Houston County, Alabama. K.R. attaches to her complaint a staff report of the United States Senate Permanent Subcommittee on Investigations dated January 2017 entitled "Backpage.com's Knowing Facilitation of Online Sex Trafficking" that summarizes the role www.backpage.com and its founders and officers (James Larkin, Michael Lacey, and Carl Ferrer) have played in the criminal industry of sex trafficking and how they have profited. *See* (Doc. 1-2 at 36–88).

Alonso sold K.R. to customers for approximately eighty dollars ($80.00) for fifteen minutes of sex with a child and approximately one hundred dollars ($100.00) for thirty minutes of sex with a child. Alonso consistently threatened and physically abused K.R. He forced her to take intoxicating agents including illegal drugs and alcohol to retain control over her.

From May 28, 2013, until approximately August 8, 2013, Alonso reserved rooms on thirty-seven different nights from Defendant Choice Hotels to carry out his sex trafficking venture. The Quality Inn franchise was owned by Defendants Veda and Joshi. During Alonso's stay, approximately ten or more men visited Alonso's room every day to have sex with K.R. and/or the other women victimized by the human trafficking venture. K.R. further alleges employees and staff at the Quality Inn knew or should have known that numerous men were visiting Alonso's room and knew or should have known that K.R. was being subjected to sex trafficking, but they took no steps to stop the criminal activity, say anything to her, or report the situation to law enforcement.

## II.   LEGAL STANDARD

### A. Federal Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). A federal district court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409

(11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Therefore, a federal court is obligated to inquire into subject matter jurisdiction "at the earliest possible stage in the proceedings." *Id.* at 410. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

Congress grants federal district courts original subject-matter jurisdiction over actions that "aris[e] under the Constitution, laws, or treaties of the United States"—federal-question jurisdiction, 28 U.S.C. § 1331; and those that involve an amount in controversy in excess of $75,000 and that are "between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens"—diversity jurisdiction, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1332). Backpage Defendants removed the case to this court on the basis of diversity of citizenship and the doctrine of fraudulent misjoinder. (Doc. 1, ¶ 3).

*B. Removal*

Congress grants defendants the right to remove an action from state to federal court so long as the district court would have had original subject-matter jurisdiction if the action had been initially filed in federal court. 28 U.S.C. § 1441(a). Removal based on diversity jurisdiction is possible "if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). While defendants have a right to remove, the Eleventh Circuit recognizes plaintiffs are the "'master of the complaint' and are 'free to avoid federal jurisdiction' by structuring their case to fall short of a requirement of federal jurisdiction." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal citation omitted). Indeed, the Eleventh Circuit has made clear that "[d]efendant's right to remove and plaintiff's right to choose his forum are not on equal footing," and "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

*C. Fraudulent Misjoinder*

Section 1332(a) requires that the plaintiff and defendant be "citizens of different States[.]" 28 U.S.C. §1332(a); *see also Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under [§ 1332(a)] requires 'complete diversity'–the citizenship of every plaintiff must be diverse from the citizenship of every defendant."). Additionally, a civil action otherwise removable solely on the basis of the jurisdiction under § 1332(a) may not be removed if any of the parties in interest is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b)(2). However, even if "on the face of the pleadings, there is a lack of complete diversity …, an action may nevertheless be removable if the joinder of the non-diverse party … [was] fraudulent." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996)). "The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction." *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996). The removing defendant bears the burden of establishing that joinder of the resident defendant was fraudulent. *Id.*

"Fraudulent joiner is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. Federal courts have recognized three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the non-diverse defendant. *Id.* Here, there is no suggestion of "outright fraud in the plaintiff's pleading of jurisdiction," but rather, the Backpage Defendants contend that the third scenario applies to defeat remand.

**III.   ANALYSIS**

K.R. seeks remand because the Defendants, Veda and Alonso, are both Alabama citizens who destroy this court's diversity jurisdiction. (Doc. 33 at 2). The Alabama Defendants, even if diverse from K.R., would be prohibited from removing the case to this court. *See* 28 U.S.C. § 1441(b)(2).

In their Notice of Removal, the Backpage Defendants submit complete diversity of citizenship exists between K.R. (who is a Mississippi citizen) and all of the Backpage Defendants (which are citizens of Delaware, Arizona, and Texas). (Doc. 1, ¶¶ 29–66). The Backpage Defendants acknowledge that certain named Defendants are Alabama citizens, but argue their citizenship should be ignored as they were fraudulently misjoined. *Id.*, ¶ 4. Specifically, the Backpage contends that K.R.'s claims against the Hotel Defendants (Choice Hotels, Veda, and Joshi) and Alonso were misjoined and should be severed. *See* (Doc. 36). They argue severance of the misjoined Defendants is warranted because "the claims against them do not arise from the same transaction or occurrence as the claims against the Backpage.com Defendants; the claims against the Backpage.com Defendants and the misjoined Defendants involve, at most, successive torts rather than joint torts; and markedly different evidence and questions of law are involved in the claims against the misjoined Defendants and the Backpage.com Defendants." *Id.*, ¶ 21.

In its response in opposition to the motion to remand, the Backpage Defendants similarly argue that the Hotel Defendants and Alonso were misjoined and therefore their citizenship must be ignored. (Doc. 39). Defendants argue K.R.'s bald, unsupported allegations of a "sex trafficking venture" or "conspiracy" cannot support a connection between the Backpage Defendants and the misjoined Defendants. When K.R.'s complaint is stripped of its conclusory assertions and inflammatory labels, Backpage submits the only allegation in the Complaint tying Backpage to the non-diverse defendants is that Alonso posted an advertisement with K.R.'s photograph on www.backpage.com. Backpage argues "the alleged posting is not a sufficient nexus to haul Backpage into a trial concerning the abuse and victimization of Plaintiff by Alonso and others—actions in which Backpage is alleged to have no involvement whatsoever." (Doc. 39 at 3). Backpage accordingly urges when the court properly

7

disregards the misjoined Defendants' citizenship, complete diversity exists to invoke the jurisdiction of this court.

Backpage submits the claims against them turn solely on their entitlement to immunity under Section 230 of the Communications Decency Act, 42 U.S.C. § 230 ("CDA"), and thus no connection exists between the claims against the Backpage Defendants and the claims against the Hotel Defendants and Alonso. Backpage explains that section 230 provides immunity to online service providers and prohibits claims against them based on content provided by third parties. According to Backpage, this issue is unrelated to and wholly separate from the claims against Alonso that he abused, mistreated, assaulted, and prostituted K.R., and the claims against the Hotel Defendants that they negligently allowed such abuse and prostitution to occur on their premises. *Id.* at 2–3.

"[A]bsent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute [her] own suit in [her] own way to a final determination." *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).[8] Backpage Defendants submit that at issue here is a species of fraudulent joinder—sometimes termed "fraudulent misjoinder" or "procedural misjoinder." The doctrine focuses on the relationship between the plaintiff's claims against the diverse defendants, with the plaintiff's claims against the non-diverse defendants. *See Tapscott*, 77 F.3d at 1360. The concern is not whether valid claims exist, but whether the relationships between the various claims meet the necessary requirement for permissive joinder under Fed. R. Civ. P. 20.

Fed. R. Civ. P. 20 provides in pertinent part that persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

---

[8] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

While the Backpage Defendants attempt to cast K.R.'s claims against them as merely "providing an online forum for third-party advertising," K.R.'s allegations go beyond that. Backpage's arguments are premised on the belief that "Backpage is alleged to have **no involvement whatsoever**." (Doc. 39 at 3) (emphasis in original). To the contrary, K.R. alleges the liability of Backpage and the other Defendants under Alabama's anti human-trafficking statute. Her allegations reference Backpage's creation of a multimillion-dollar advertising platform that caters to pimps and sex traffickers in order to benefit financially from illegal prostitution and sex trafficking, including the sexual exploitation, trafficking, and victimization of children, including K.R. She cites to the findings of the Senate Report entitled "Backpage.com's Knowing Facilitation of Online Sex Trafficking" that summarizes the role www.backpage.com and its founders and officers (James Larkin, Michael Lacey, and Carl Ferrer) have played in the criminal industry of sex trafficking. She describes Backpage's practices and procedures of altering its "adult" advertisements before publication by deleting words, phrases, and images indicative of criminality, including child sex trafficking, in order to conceal evidence of criminality, and which knowingly facilitated illegal prostitution and child sex trafficking.

She alleges the combined actions of all the named Defendants caused her injuries and that she would be prejudiced significantly if she could not present all of her claims in a single action. K.R. has alleged that all the Defendants conspired to cause her injuries and that her right to relief for her injuries arises out of the same series of occurrences which involve common questions of law and fact to all Defendants.

The court finds the alleged actions of the Backpage Defendants in engaging with Alonso, an Alabama resident defendant, to advertise the sexual services of a minor child, which services were carried out in a Dothan Alabama Quality Inn owned and operated by Veda and Joshi, and resulted in injury to K.R., arise from the same operative facts or series of occurrences. Backpage's arguments to

the contrary go to the merits of the claims against it, rather than the bona fides of the claims against other parties who are alleged to have participated, albeit in different roles, in the events that caused Plaintiff's injuries. There are questions of law or fact that are common to all Defendants that will arise in the action.

Backpage argues that K.R. misjoined Alonso and the Hotel Defendants in an "obvious effort to evade federal diversity jurisdiction and frustrate Backpage's statutory right of removal" (Doc. 39 at 2), but "Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *Triggs*, 154 F.3d at 1291 (citing *Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184 (1913)). "If there is a joint liability, [a plaintiff] has an absolute right to enforce it, whatever the reason that makes [her] wish to assert the right. *Triggs*, 154 F.3d at 1291 (quoting *Chicago, Rock Island & Pac. Ry.,* 227 U.S. at 193). There is nothing trivial or far-fetched in the claims against these defendants. K.R. has sued Defendants for her injuries that arise from the same operative facts or series of occurrences. The court concludes the Alabama Defendants have not been fraudulently misjoined. Accordingly, the court lacks subject matter jurisdiction.

## IV.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Plaintiff's Motion to Remand (Doc. 33) be **granted**, and this case be remanded to the Circuit Court of Houston County, State of Alabama, Case No. 38-CV-2017-900041. It is further **recommended** that the Clerk be directed to terminate all pending motions and to close the case.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before July 10, 2017. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 26th day of June, 2017.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE